UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-80685-SMITH/MATTHEWMAN

ARRIVA MEDICAL LLC,

    Plaintiff,

vs.

SECRETARY OF THE UNITED
STATES DEPARTMENT OF
HEALTH AND HUMAN
SERVICES,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD

THIS CAUSE is before the Court on Plaintiff's Motion to Complete and Supplement the Administrative Record. [DE 37]. This matter was referred to the undersigned by the Honorable Rodney Smith, United States District Judge. *See* DE 44. The Motion is fully briefed [DEs 40, 41], and the Court held a hearing via Zoom VTC on July 24, 2020. As such, the matter is ripe for review.

### I.  BACKGROUND

    a.  Procedural History

In this civil action, Plaintiff, Arriva Medical, LLC, seeks review of the March 28, 2019 decision of the United States Department of Health and Human Services ("HHS") Departmental Appeals Board ("DAB"), which sustained the ALJ's previous decision upholding the revocation of Plaintiff's Medicare billing privileges. In October, 2016, the Centers for Medicare & Medicaid Services ("CMS") revoked Plaintiff's Medicare enrollment and billing privileges pursuant to Title

1

42 of the Code of Federal Regulations (C.F.R.), section 424.535(a)(8)(i), because Plaintiff, a supplier of durable medical equipment, prosthetics, orthotics and supplies to Medicare beneficiaries, submitted claims for items that could not have been provided to the beneficiaries on dates of service between April 15, 2011, and April 25, 2016, because the beneficiaries were deceased. CMS imposed a bar of three years on Plaintiff's eligibility to re-enroll in the Medicare program. The DAB determined that CMS lawfully revoked Arriva's billing privileges under 42 C.F.R. § 424.535(a)(8)(i). This was the "final decision" of the HHS. [AR[1] 29-45].

After exhausting its administrative remedies, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1395cc(j)(8), which incorporates 42 U.S.C. § 1395cc(h)(1)(A). In turn, section 1395cc(h)(1)(A) incorporates 42 U.S.C. § 405(g), the judicial review provision of the Social Security Act. Section 405(g) states, in pertinent part, that:

> …The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing. The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g).

    b.    <u>Plaintiff's Motion to Complete and Supplement the Administrative Record</u>

In the present Motion [DE 37], Plaintiff argues that the Administrative Record is incomplete and must be completed and supplemented via discovery. Plaintiff argues that such relief is necessary to ensure a complete record, secure effective judicial review, and ascertain whether the HHS acted arbitrarily and capriciously. Plaintiff argues that HHS has never explained why it decided to impose the three-year penalty on Plaintiff despite not doing so in similar cases—a decision which Plaintiff claims is arbitrary and capricious. Plaintiff argues that this civil action

---

[1] The undersigned will refer to the Administrative Record as "AR" throughout this Report and Recommendation. It is found at DE 30.

is its first opportunity to challenge the lawfulness of HHS's decision because the DAB refused to consider Plaintiff's argument. Plaintiff thus seeks to take discovery regarding the CMS's decision-making.

In response [DE 40], the Government argues that Plaintiff misunderstands the scope of this civil action. The Government argues that, under Section 405(g), district courts perform a very limited role; i.e., to determine whether the HHS's final decision was supported by substantial evidence. The Government asserts that the AR contains everything that was before the DAB when it issued its final decision on behalf of the HHS. To the extent that Plaintiff seeks review regarding the CMS's decision-making, the Government argues that the CMS's initial decision to debar Plaintiff for three years is not the final agency decision.

In any event, the Government argued that CMS adequately explained its reason for revocation in numerous letters to Plaintiff. Specifically, CMS's four-page letter to Plaintiff dated October 5, 2016, [DE 30-12, pp. 1-4; AR 1922], stated, "We have determined that you are not in compliance with [...] 42 CFR section 424.535(a)(8)(i) – Abuse of Billing Privileges." *Id*. That letter went on to explain how it arrived at that decision:

> "Data analysis of claims billed by Arriva Medical, LLC, for dates of service between April 15, 2011, and April 25, 2016, revealed that Arriva Medical, LLC billed for items/services provided to 211 Medicare beneficiaries who, per the Social Security Administration Death Master File, were deceased on each purported date of service."

*Id*. That letter also provided an attachment that contained a statistical sample of the claims data. Specifically, that statistical sample listed 47 instances where the dates that Plaintiff's service to the beneficiary commenced and ended, had occurred after the date of the beneficiary's death. Each instance contained the beneficiary's first initial and last name, and a claim control number. When asked by Plaintiff to reconsider its decision and provide documentation to support its determination

that Plaintiff submitted 47 fraudulent claims, CMS provided an additional letter, dated November 2, 2016, which consisted of five additional pages of explanation for its decision. [DE 30-12, pp. 5-10; AR 1926-1931].

Finally, the Government claims that Plaintiff is free to argue that the AR lacks substantial evidence to support a revocation under 42 C.F.R. 424.535(a)(8)(i), or that the three-year debarment failed to comport with the applicable legal standards. Thus, the Government claims there is no need to supplement, or any legal basis for supplementing, the administrative record at this time.

## II. ANALYSIS

Plaintiff's Motion is creative, interesting, well written, but ultimately without merit. As a general matter, the underlying Motion seeks to insert broad questions of administrative procedure into a routine request to correct or supplement the administrative record. Plaintiff likens its case to those in which an agency has illegally bifurcated its decision-making to elude judicial review and create "law-free zones" around low-level agency decision-makers. In so arguing, Plaintiff implicitly asks this Court to declare that the HHS's internal review procedures are illegal, and unconstitutional, as a matter of law. However, the Eleventh Circuit has already instructed district courts on the proper procedure for resolving motions to supplement the administrative record, and it does not require this Court to make such a far-reaching ruling when deciding Plaintiff's Motion.

### a. Completion and/or Supplementation of the Administrative Record

The Court must first determine precisely what relief is sought in Plaintiff's motion, because "motions to complete [are] analytically distinct from motions to supplement." *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 2020 WL 2732340, at *8 (S.D. Fla. May 26, 2020). In this case, Plaintiff's Motion combines two distinct types of relief, as the Motion is styled

4

as one to both **complete** and **supplement** the administrative record. However, these two types of relief are distinct and are analyzed differently under applicable case law.

### b. Completion of the Administrative Record

To prove that the record designated by the agency is incomplete, a party must establish that the materials at issue were either directly or indirectly considered by the relevant agency decision makers, and further, the party must clearly set forth in its motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *BBX Capital Corp. v. FDIC*, 2018 WL 6531601, at *2 (S.D. Fla. Aug. 15, 2018). However, in its Motion, Plaintiff fails to meet these requirements. Plaintiff has not identified any of the materials at issue, much less when they were presented to the HHS, to whom, and under what context, as is required when a party seeks to complete the record. Thus, to the extent that Plaintiff seeks to complete the administrative record, its Motion is facially insufficient and should be denied. The Court will now address whether Plaintiff's effort to supplement the record fares any better.

### c. Supplementation of the Administrative Record

Courts in this Circuit have stated that supplementation of the administrative record may be appropriate when "there is a strong showing of agency bad faith or improper behavior." *Id*. (quoting *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 n. 1 (11th Cir. 1996)). Accordingly, the primary issue for resolution as to Plaintiff's Motion to supplement the administrative record is whether "there is a strong showing of agency bad faith or improper behavior." *Cobb's History*, 87 F.3d at 1246.

In *Cobb's History*, the Eleventh Circuit stated that a district court may go beyond, or supplement, the administrative record only where: 1) an agency's failure to explain its action effectively frustrates judicial review; 2) it appears that the agency relied on materials not included

5

in the record; 3) technical terms or complex subjects need to be explained; or 4) there is a strong showing of agency bad faith or improper behavior. *Id.* at 1246 n. 1 (citing *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436–37 (9th Cir.1988)). Thus, while certain circumstances may justify supplementing the administrative record, a court conducting a judicial review is not "generally empowered" to do so. *Cobb's History*, 87 F.3d at 1247.

In maintaining this tradition of deference to an agency's designation of the contours of its administrative record, the Eleventh Circuit recently stated that while it "acknowledged that various factors could be considered in determining the propriety of reviewing extra-record material on review of an agency rule, [] in practice, however, we generally have focused pointedly on whether the petitioners have made a strong showing of bad faith or improper behavior by the agency." *Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Labor*, 812 F.3d 843, 875 (11th Cir. 2016) (citing *Alabama–Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007)). To that end, Judge Robin Rosenberg recently noted that an agency's designation of the administrative record receives "a strong presumption of regularity." *Centers for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 2020 WL 2732340, at *10 (S.D. Fla. May 26, 2020) (citing *BBX Capital Corp. v. FDIC*, 2018 WL 6531601, at *1 (S.D. Fla. Aug. 15, 2018)).

After carefully reviewing the parties' papers, the Eleventh Circuit's framework for addressing requests to supplement the administrative record, and with the benefit of lengthy oral argument, it is clear to the Court that there is no basis or need to supplement the administrative record in this case. Regarding the first *Cobb's History* instance in which a Court may supplement the administrative record, there is no failure by HHS to explain its action which frustrates judicial review. As a preliminary matter, the Court notes that the administrative record is quite long, consisting of 2,636 pages. [DE 30]. Indeed, the record contains countless pages of detailed findings

which explain the legal basis for the revocation of Plaintiff's Medicare billing privileges, beginning with the CMS's initial letter to Plaintiff, and culminating with the DAB's opinion upholding the ALJ's decision to sustain the CMS's revocation. To that end, CMS's initial four-page letter to Plaintiff dated October 5, 2016, [DE 30-12, pp. 1-4;AR 1922], stated, "We have determined that you are not in compliance with […] 42 CFR section 424.535(a)(8)(i) – Abuse of Billing Privileges." *Id*. That letter went on to explain how it arrived at that decision:

> Data analysis of claims billed by Arriva Medical, LLC, for dates of service between April 15, 2011, and April 25, 2016, revealed that Arriva Medical, LLC billed for items/services provided to 211 Medicare beneficiaries who, per the Social Security Administration Death Master File, were deceased on each purported date of service.

*Id*. That letter also provided an attachment that contained a statistical sample of the claims data. Specifically, that statistical sample listed 47 instances where the dates that Plaintiff's service to the beneficiary commenced and ended, actually occurred after the date of the beneficiary's death. Each instance described contained the beneficiary's first initial and last name, and a claim control number. When asked by Plaintiff to reconsider its decision and provide documentation to support its determination that Plaintiff submitted 47 fraudulent claims, CMS provided an additional letter, dated November 2, 2016, which consisted of five additional pages of explanation for its decision. [DE 30-12, pp. 5-10; AR 1926-1931].

As Plaintiff made its way up HHS's administrative review ladder, the DAB's opinion finally, and clearly, stated the legal and factual bases upon which its decision was based. *See Arriva Medical, LLC*, DAB No. 2934 (Mar. 28, 2019); [DE 30; AR 29-45]. Specifically, the DAB found that Plaintiff "does not dispute the ALJ's central finding on which the ALJ upheld the section 424.535(a)(8)(i) revocation on summary judgment for CMS - that *Arriva billed Medicare on nine occasions for supplies furnished after the beneficiaries had died.*" *Id.* at *8. In other words, Plaintiff did not dispute that it did, in fact, submit nine claims on behalf of deceased beneficiaries.

Based thereupon, the DAB held that "CMS had a valid legal basis to revoke Arriva's Medicare billing privileges under 42 C.F.R. § 424.535(a)(8)(i)." This clearly sets forth the factual and legal basis for the revocation. The Court finds that the DAB's sixteen-page opinion adequately explains its conclusions and findings, such that the Court may engage in judicial review. In other words, HHS has adequately explained its actions, and judicial review has not been and will not be frustrated. The Court is fully enabled to determine whether HHS's final decision was supported by substantial evidence, and no supplementation of the record is needed.

Regarding the second and fourth instances specified by the Eleventh Circuit in *Cobb's History*,[2] it does not appear that HHS relied upon materials not included in the record, and there is not a strong showing of bad faith or improper behavior. In fact, there is simply no showing whatsoever of bad faith or improper behavior. The DAB's opinion devoted six pages to summarizing all of the materials that were before it when it rendered its decision. [AR 31-37]. In any event, Plaintiff has not pointed to any specific document or category of documents that it asserts HHS relied upon. Instead, Plaintiff seeks "additional discovery relevant to Arriva's claims of bad faith and improper behavior." [DE 37, p. 17]. But Plaintiff puts the cart before the horse, arguing that, because HHS imposed a three-year debarment, Plaintiff should be permitted to conduct discovery to find evidence of whether this determination—which is fully allowed by the statute—was the result of bad faith on the part of the agency. Plaintiff's argument relies on fallacious circular reasoning by insisting that the severity of the punishment itself serves as evidence of bad faith. Such speculation by Plaintiff is insufficient to support the relief it seeks. Plaintiff is neither entitled to supplementation of the record nor additional discovery.

---

[2] The Third *Cobb's History* instance in which a court may order that the record be supplemented—as needed to explain complex scientific or technical terms—is inapplicable here.

Though it need not address the factual merits of Plaintiff's argument because it relies upon unsound logic, the Court disagrees that there *must* be something nefarious going on behind the scenes at CMS because the penalty of a three-year debarment is allegedly so draconian. To this point, the Court simply refers Plaintiff to a case cited in the DAB's decision as a comparator. In *Med-Care Diabetic & Medical Supplies, Inc.*, DAB No. 2764 (2016), a large mail-order diabetic testing supply company was debarred for three years as a result of its submission of claims on behalf of beneficiaries who were deceased. The number of claims in *Med-Care* that were *undisputedly*[3] fraudulent was relatively small—just 78 claims out of "millions of claims"—but the exact same penalty that was imposed in *Med Care* was imposed in the instant case—the maximum debarment of three years. Both suppliers (Med-Care in the comparator case and Plaintiff in the instant case) admitted to submitting more than three claims on behalf of deceased beneficiaries; thus, both suppliers plainly admitted to violating 42 C.F.R. § 424.535(a)(8)(i), and both suppliers received the same statutorily-authorized penalty. *See also, e.g., John M. Shimko, D.P.M.*, DAB No. 2689 (2016) (three-year debarment for healthcare provider who undisputedly submitted 17 claims on behalf of deceased beneficiaries). Thus, although Plaintiff in the instant case seeks to distinguish the instant case from all other decisions of the HHS by asserting that it received a draconian penalty for a trivial violation, that argument is based upon a flawed view of the facts in the Administrative Record.

In the instant case, CMS found 211 instances of fraudulent billing, and provided Plaintiff with a sample of 47. Plaintiff objected to a certain number of the 47 claims before the ALJ. The

---

[3] Both Med Care and the instant case involved a large initial number of problematic or fraudulent claims that were eventually whittled down to a smaller number of claims that were undisputedly false. Plaintiff in the instant case and the supplier in Med-Care both asserted differing theories as to why CMS was incorrect regarding certain claims from the initial sample, but both eventually agreed that they had submitted more than three claims in violation of the regulation.

ALJ rejected Plaintiff's arguments, but emphasized that the disputes regarding those claims were not "material facts" because Plaintiff already admitted to submitting the nine fraudulent claims. The DAB ultimately agreed with the ALJ's finding, emphasized that nine claims were undisputedly improper, and concluded that this was sufficient to affirm the ALJ's finding and the CMS's imposition of a three-year debarment. The Court notes this history because in the instant case there were, quite likely, significantly more than nine fraudulent claims—though the exact number of claims is immaterial to this Court's ultimate task, which is to determine whether the HHS's final decision that Plaintiff violated 42 C.F.R. § 424.535(a)(8)(i) is supported by substantial evidence.

The Court will now address, and distinguish, the case most heavily relied upon by Plaintiff— *Exxon Corporation v. Department of Energy*, 91 F.R.D. 26 (N.D. Tex. 1981). While nearly 40 years old, and not binding on this Court, this case endures as support for the axiomatic proposition that "[t]he 'whole' administrative record [] consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Id*. at 33 (collecting cases). In that case, the court found that Exxon, the party seeking to supplement the administrative record, was entitled to limited discovery into the evidentiary basis for the agency's determination that Exxon violated an administrative rule. The court found that Exxon

> has made a strong showing that the Administrative Record certified to this Court is incomplete. Incompleteness is evident from the record's face. The 126 page record consists solely of two copies of Exxon's Appeal of the Remedial Order, Exxon's Application for Stay of the Remedial Order, the Decision and Order of the FEA granting a stay and the Decision and Order of DOE's Office of Hearings and Appeals.

*Id*. at 34 (internal record citations omitted). The *Exxon* court also found that the "Record submitted does not even comply with the agency's own contents guidelines which were in effect when this Record was compiled." *Id*. at 36.

But in this case, Plaintiff has made *no* showing that the record is incomplete on its face. Plaintiff merely supplies speculation that it must be incomplete, which the Court rejects. As discussed above, CMS provided numerous letters and statistical evidence to Plaintiff indicating the factual and legal bases for its decision. In contrast, the factual and legal bases for the agency's decision were unknown to Exxon. *Id*. at 39. Moreover, the record in this case is nearly *twenty times longer* than that in *Exxon*. While the size of the record is not dispositive of whether it should be supplemented, "the size of the record is certainly a factor that a court should consider in deciding whether to take the unusual step of permitting invasive discovery into administrative decision-making." *NVE, Inc. v. Dep't of Health & Human Servs*., 436 F.3d 182, 196 (3d Cir. 2006) (distinguishing *Exxon* on similar grounds). Further, there is no allegation that the record does not comply with the HHS's own content guidelines. Accordingly, Plaintiff's heavy reliance placed on *Exxon* is misplaced.

### III. CONCLUSION

Accordingly, under the Eleventh Circuit's framework for determining whether to complete or supplement an administrative record, there is no basis or need to do so in this case. Plaintiff has not rebutted the presumption of regularity. Instead, Plaintiff has made a circular argument that rests upon bare speculative conclusions of bad faith in order to seek to go on a discovery fishing expedition for evidence of bad faith. However, in this judicial review proceeding, in which the Court is tasked with determining whether HHS's decision was supported by substantial evidence, all of the necessary materials that were relied upon by HHS are contained in the more than 2,500

11

pages that make up the administrative record. To the extent that Plaintiff wishes to advance the argument that HHS's decision—or internal review procedures—violate bedrock principles of administrative law, it is free to do so. To that end, Plaintiff's argument that CMS is insulated from judicial review is listed numerous times in the record, and Plaintiff is free to advance that argument on summary judgment. However, as noted above, under the Eleventh Circuit's framework for courts addressing a motion to complete or supplement the record, there is no need or basis to do so at this time. Further, for the reasons stated herein, no additional discovery should be authorized or allowed.

For these reasons, the Undersigned respectfully **RECOMMENDS** that Plaintiff's Motion to Complete and Supplement the Administrative Record [DE 37] be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

A party shall file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Rodney Smith within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Failure to object to this Report and Recommendation within that time period waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. 11th Cir.R. 3-1.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of August, 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge